IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AIH ACQUISITIONS, LLC, | § | |
| | § | |
| Debtor. | § | Bankruptcy No. 09-42480-rfn7 |
| | § | |
| _____ | § | |
| | § | |
| SCOTT MEYERS, ET AL., | § | Adversary No. 09-04212-rfn |
| | § | |
| Appellants, | § | |
| | § | District Court Case |
| VS. | § | No. 4:11-CV-379-A |
| | § | |
| TEXTRON FINANCIAL CORPORATION, | § | |
| | § | |
| Appellee. | § | |

MEMORANDUM OPINION
and
ORDER

The above-captioned district court action was docketed as an appeal by Susan and Scott Meyers (the "Meyerses") from a March 19, 2011 order of the bankruptcy court dismissing with prejudice claims asserted by the Meyerses in an amended petition in intervention against Textron Financial Corporation ("Textron") in Adversary Proceeding No. 09-04212 on the docket of the bankruptcy court in Chapter 7 Case No. 09-42480 in which AIH Acquisition, LLC ("AIH") is the Debtor. Consistent with the discussions had during a telephone conference/hearing conducted on September 6,

2011, the court is reversing the dismissal orders of the
bankruptcy court, and is ordering withdrawal of the reference to
the bankruptcy court of the claims made by the Meyerses against
Textron in Adversary Proceeding No. 09-04212-rfn.  For whatever
assistance it might provide in the future handling of this
litigation, the court is providing in this memorandum opinion and
order the reasoning of the court that led to the decision to take
the steps mentioned above.

I.

Background

American IronHorse Motorcycle Co., Inc. ("AIMC"), was placed
in involuntary bankruptcy in 2008.  Textron was the primary
lender to AIMC prior to its bankruptcy, and supplied credit to
AIMC's dealers to finance dealer floor plans for the purchase of
products from AIMC.  AIH was formed by the Meyerses after
commencement of AIMC's bankruptcy for the purpose of creating an
entity for use in the purchase of assets from the AIMC bankruptcy
estate.  Because all of AIMC's assets were collateral for the
debt owed by AIMC to Textron, negotiations related to the
acquisition of AIMC assets occurred between the Meyerses, acting
for AIH, and Textron.  In June 2008 the bankruptcy court approved
the sale of substantially all of AIMC's assets to AIH.  In April

2

2009 AIH filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, thereby commencing Case No. 09-42480.

In April 2010 the AIH bankruptcy case was converted from Chapter 11 to Chapter 7. Several adversary proceedings related to the AIH bankruptcy case were filed in that case, which were consolidated under Adversary No. 09-04212.

In May 2010 the Meyerses filed their motion for leave to file a petition in intervention in Adversary No. 09-04212, which was granted by the bankruptcy court in August 2010. In December 2010 the Meyerses filed their original petition in intervention making claims of fraudulent inducement and negligent misrepresentation against Textron based on things they allege occurred during the negotiations and discussions that led to the acquisition by AIH, acting through the Meyerses, of assets of AIMC. In January 2011 Textron moved to dismiss the original petition in intervention on the ground that the Meyerses failed to plead their claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and to dismiss the negligent misrepresentation claim based on the further ground that the pleading showed on its face that the claim was barred by limitations.

Rather than to respond to the motion to dismiss the petition in intervention, on January 24, 2011, the Meyerses filed their first amended petition.  In February 2011 Textron moved to dismiss the first amended petition, alleging the same grounds alleged in the motion to dismiss the original one.  The Meyerses filed their objection to the motion to dismiss, and Textron replied in support of the motion.

In early February 2011, the Meyerses filed Proof of Claim No. 16 in Case No. 09-42480, as an unsecured claim against AIH for "money loaned."

At a hearing conducted March 7, 2011, the bankruptcy court, after having heard argument from counsel, announced his intention to dismiss the claims asserted by the first amended petition in intervention with prejudice, stating on the record the legal conclusions he reached that led to his decision to dismiss and the facts and conclusions that led to his decision to dismiss with prejudice.  The bankruptcy court's reason for dismissing the negligent misrepresentation claim was that the Meyerses did not contest Textron's entitlement to have that claim dismissed.  The dismissal of the claims of fraudulent inducement were based on the bankruptcy court's conclusion that the allegations of the amended pleading did not satisfy the particularity requirements

4

of Rule 9(b).   The decision to dismiss the fraud claims with
prejudice was prompted by the bankruptcy court's conclusion that
the Meyerses had failed to avail themselves of ample
opportunities they had to file a pleading that complied with the
Rule 9(b) pleading requirements.

On March 19, 2011, the bankruptcy court signed an order
granting Textron's motion to dismiss the claims made by the
Meyerses in their first amended petition in intervention and
incorporating in order form the findings of fact and conclusions
of law announced by the bankruptcy court on the record at the
March 7 hearing.   In late March 2011, the Meyerses filed a motion
asking the bankruptcy court to reconsider its order of dismissal,
to which Textron filed an objection in response.   The motion to
reconsider was denied by the bankruptcy court by order signed
April 14, 2011.   The appeal that initiated this district court
Case No. 4:11-CV-379-A followed.

II.

The Issues Raised in the Appeal

The Meyerses defined in their brief the issues on appeal as
follows:

1.   The Bankruptcy Court erred when it asserted
     jurisdiction over the personal claims of Scott and

        Susan Meyers against Textron Financial
        Corporation.

2.    The Bankruptcy Court erred when it ruled that the
        claims of Scott and Susan Meyers were not plead
        with the required specificity.

3,    The Bankruptcy Court erred when it determined that
        the appropriate remedy for correcting any alleged
        pleading issue was dismissal of the claims of
        Scott and Susan Meyers with prejudice.

Br. of Appellants at 1.

Textron recharacterized the issues as follows:

1.    Did the Bankruptcy Court properly exercise
jurisdiction over the Meyers' [sic] *First Amended
Petition in Intervention* against Textron Financial?

2,    Did the Bankruptcy Court properly rule that
the Meyers' [sic] *First Amended Petition in
Intervention* was deficient under Federal Rule of Civil
Procedure 9(b)?

3.    Did the Bankruptcy Court abuse its discretion
by dismissing the Meyers' [sic] *First Amended Petition
in Intervention* with Prejudice?

Br. of Appellee at 1.

III.

<u>Analysis</u>

A.    <u>The "Jurisdiction" Issue</u>

The parties state the issue as involving "jurisdiction" of

the bankruptcy court.  Actually, the "jurisdiction" dispute turns

not on whether the bankruptcy court had jurisdiction but on

whether the bankruptcy court had the constitutional authority to enter a final judgment in the form of the dismissal with prejudice.   Both parties focused in their appellate briefs on whether the first amended petition in intervention is a "core" or "non-core" proceeding.   The Meyerses argued that the petition was merely a "related to" proceeding, and that the power of the bankruptcy court was limited to the submission of proposed findings of fact and conclusions of law to the district court, as contemplated by 28 U.S.C. § 157(c)(1).   While not mentioning the holding of the Supreme Court in Stern,[1] the Meyers essentially made the same argument on which the respondent in Stern prevailed.

Textron acknowledged the existence of the Stern decision in its brief on appeal, but took the position that not only did the bankruptcy court have the authority under 28 U.S.C. § 157(b) to resolve the claims asserted in the petition in intervention by a final judgment of dismissal without prejudice, the exercise by the bankruptcy court of the statutory authority was constitutionally acceptable "because the Meyers [sic] voluntarily subjected themselves to the Bankruptcy Court's jurisdiction by

---

[1] Stern was decided five days before the date of filing of the appellate brief of the Meyerses. Stern v. Marshall, No. 10-179, 564 U.S. ___, 131 S. Ct. 2594 (June 23, 2011).

(a) seeking to intervene, (b) filing the Amended Petition, and (c) filing the Meyers [sic] Proof of Claim." Br. of Appellee at 11.

The court has concluded that the plurality decision in Stern, when applied to this case, leads to the conclusion that the bankruptcy court lacked the constitutional authority to render the judgment of dismissal with prejudice. The four-justice opinion of the Supreme Court ended with the following conclusion:

> The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.

Stern, 131 S. Ct. at 2620. Justice Scalia concluded his concurring opinion with the statement that Stern, the petitioner, "points to no historical practice that authorizes a non-Article III judge to adjudicate a counterclaim of the sort at issue here." Id. at 2621 (Scalia, J., concurring).

The court concludes that a petition in intervention that asserts only state law claims, such as the one filed by the Meyerses, is not entitled to any greater bankruptcy status than the counterclaim filed in Stern in response to Marshall's proof

of claim.  The court will assume, arguendo,[2] that the claims made
in the petition in intervention are "core" within the meaning of
28 U.S.C. § 157(b), but, as the Supreme Court held in <u>Stern</u>, that
would not mean that the bankruptcy court had the constitutional
authority to enter a final judgment on the state law claims
asserted in the petition.  Textron does not contend that the
claims of the petition in intervention would be resolved in the
process of ruling on the Meyerses' proof of claim.  The proof of
claim seeks recovery from the AIH bankruptcy case of
$3,742,528.37, representing loans made by the Meyerses to AIH
during its existence pre-bankruptcy.  So far as the court can
tell, the only relationships between the proof of claim and the
state law claims asserted in the amended petition in intervention
are that in each instance the Meyerses are the claimants and the
losses claimed by the Meyerses relate to AIH.

For the reasons given above, the court is ordering the
reversal and vacatur of the order signed in Adversary No. 09-

---

[2]The court is satisfied that the first amended petition in intervention was not a core proceeding.
It did not assert claims arising under title 11 or in a case under title 11, as contemplated by 28
U.S.C. § 157(b)(1).  In fact, as did the bankruptcy judge, the court questions whether the petition in
intervention even qualified as a "related to" proceeding within the meaning of § 157(c)(1). Supp. R. at
60-61, 65-66.  The positions taken by the parties at the March 7 hearing appear to have been that the
proceeding was "related to," not that it was "arising in" or "arising under." <u>Id.</u> at 61-65. As will be
mentioned in the text, the court questions whether federal court jurisdiction ever existed as to the original
or amended petition in intervention under 28 U.S.C. § 1334(b).

04212 on March 19, 2011 (entered on the docket as item 118, showing a filing date of March 21, 2011). The court does not reach the second or third issues on appeal, as the parties have defined them.

B.   <u>The Present Status of Adversary No. 09-04212</u>

Since the dismissals of claims asserted in the amended petition in intervention were ordered by the bankruptcy court on March 19, 2011, a settlement has been reached between the Debtor, AIH, and its Chapter 7 Trustee, on the one hand, and Textron, on the other, that resolved all claims either had made against the other in Adversary No. 09-04212, as consolidated. All those claims were dismissed by an order the bankruptcy court signed July 15, 2011. A similar settlement agreement was reached that led to the dismissal of all claims involving Renegade Motorcycles, LLC, another party in Adversary No. 09-04212, as consolidated, which led to a July 15, 2011 order dismissing all claims of AIH, as the Debtor, and the Chapter 7 Trustee against Renegade. So far as the court can determine, once those dismissals occurred, the only claims remaining in Adversary No. 09-04212, as consolidated, are claims that were made by Textron against the Meyerses in the adversary proceeding that was originally docketed as Adversary Proceeding No. 09-04299-rfn in

Case No. 09-42480, which was one of the adversary cases

consolidated into Adversary No. 09-04212.[3]

C.    The Court is Withdrawing the Reference as to the
      Amended Petition in Intervention

        The court has a serious question as to whether the court has

jurisdiction over the first amended petition in intervention

under 28 U.S.C. § 1334(b).  So far as the court can tell, there

is no reasonable basis for any argument that the claims of the

amended petition in intervention arise under title 11, arise in a

case under title 11, or are related to a case under title 11.

However, the court does not need to resolve that issue because

the court does have subject matter jurisdiction over the claims

made by the Meyerses against Textron in the first amended

petition in intervention based on diversity of citizenship and

amount in controversy.  There seems to be no disagreement that

the Meyerses are citizens of the State of Texas, and that Textron

is a citizen of the State of Delaware, where it is incorporated,

and the State of Rhode Island, where it has its principal place

---

[3]During the telephone conference/hearing conducted in this action on September 6, 2011, the parties, through counsel, informed the court that all claims by anyone in Adversary No. 09-04212 have now been dismissed.  Apparently they overlooked the ongoing pendency of the claims Textron asserted against the Meyerses, originally in Adversary No. 09-04299 and now in Adversary No. 09-04212, as consolidated.

of business.   Thus, there is complete diversity of citizenship.[4]
The court is satisfied that the amount in controversy is far in
excess of the requisite jurisdictional amount.

As discussed during the September 6, 2011 telephone
conference/hearing the appropriate course at this time is to
withdraw the reference to the bankruptcy court of the first
amended petition in intervention so that it will be before this
court for all purposes.   For all of the reasons given above,
there is good cause for withdrawal of the reference of the first
amended petition in intervention.

IV.

Order

For the reasons given above,

The court ORDERS that all rulings made by the bankruptcy
court in the order signed in Adversary No. 09-04212 on March 19,
2011 (filed March 21, 2011, docket entry 118) be, and are hereby,
reversed and vacated.

The court further ORDERS that the reference from this court
to the bankruptcy court of the first amended petition in

---

[4]The Meyerses refer to Renegade Motorcycles, LLC, as a defendant on the second page of their
first amended petition in intervention, Supp. R. at 2, ¶ 4, but thereafter no mention is made of Renegade
in the pleading.  No relief is sought by the Meyerses from Renegade.  The court does not consider that
Renegade is a party to the first amended petition in intervention.

intervention filed by the Meyerses in Adversary No. 09-04212 on January 24, 2011, be, and is hereby, withdrawn so that from this point forward such first amended petition in intervention and all claims made therein will pend on the docket of this court as district court Case No. 4:11-CV-624-A.

The court further ORDERS that the style of the withdrawn proceeding, to be pending on the docket of this court as Case No. 4:11-CV-624-A, shall be styled, "Scott Meyers and Susan Meyers, Plaintiffs, v. Textron Financial Corp., Defendant," and that the clerk and all parties shall use that style in such action.

The court further ORDERS that at the outset the papers in Case No. 4:11-CV-624-A shall consist of (1) a copy of this order, (2) a copy of the final judgment in this action, and (3) copies of the following items that were filed in Adversary No. 09-04212:

(a)    Scott and Susan Meyers' First Amended Petition in Intervention (filed January 24, 2011, docket entry 102);

(b)    Textron Financial Corporation's Motion to Dismiss Scott and Susan Meyers' First Amended Petition in Intervention (filed February 1, 2011, docket entry 105);

(c)   Brief in Support of Textron Financial Corporation's
Motion to Dismiss Scott and Susan Meyers' First Amended
Petition in Intervention (filed February 1, 2011,
docket entry 106);

(d)   Objection to Textron Financial's Motion to Dismiss
Scott and Susan Meyers' First Amended Petition in
Intervention (filed February 22, 2011, docket entry
110);

(e)   Textron Financial Corporation's Reply in Support of Its
Motion to Dismiss Scott and Susan Meyers' First Amended
Petition in Intervention (filed March 3, 2011, docket
entry 113);

(f)   Transcript of March 7, 2011, proceeding on Motion to
Dismiss Scott and Susan Meyers' First Amended Petition
(filed May 27, 2011, docket entry 136);

(g)   Motion to Reconsider Order Granting Textron Financial's
Motion to Dismiss Scott and Susan Meyers' First Amended
Petition in Intervention and Request for Oral Arguments
(filed March 31, 2011, docket entry 121); and

(h)   Textron Financial Corporation's Objection and Response
in Opposition to the Motion to Reconsider Order
Granting Textron Financial's Motion to Dismiss Scott

and Susan Meyers' First Amended Petition in

Intervention and Request for Oral Argument and Textron

Financial's Request for Payment of Attorneys' Fees

(filed April 14, 2011, docket entry 122).

The court further ORDERS that by September 14, 2011, Scott

Meyers and Susan Meyers shall pay to the clerk of court whatever

filing fee is required for the opening of Case No. 4:11-CV-624-A,

and shall provide to the clerk for filing in such case exact

copies of each of the items mentioned in subparts 3(a)-(h)

immediately above as items to be filed in Case No. 4:11-CV-624-A,

using exact copies of those items as they appear in the records

of the bankruptcy court in Adversary No. 09-04212.

The court further ORDERS that the clerk of the bankruptcy

court need not transmit to the clerk of this court the originals

or copies of any of the papers in bankruptcy Case No. 09-42480 or

Adversary No. 09-04212 unless directed to do so by further order

of this court.

The court further ORDERS that all papers filed in the

bankruptcy court in Adversary No. 09-04212 will, to the extent

pertinent to issues raised in Case No. 4:11-CV-624-A, be treated

the same as if they were papers filed in the newly created Case

No. 4:11-CV-624-A, and that the parties can refer to papers on

15

file with the bankruptcy court in Adversary No. 09-04212 by reference to docket numbers in that adversary proceeding.

The court further ORDERS that the motion of Textron to dismiss the first amended petition in intervention, filed by Textron in Adversary No. 09-04212 on February 1, 2011 (docket entry 105), is ripe for ruling and will be dealt with by the court in due course, and that the parties need not make further filings in support of or in opposition to such motion.[5]

SIGNED September 7, 2011.

JOHN McBRYDE
United States District Court

_____

[5]The court plans to take into account and consider all of the pertinent filings that already have been made in Adversary No. 09-04212 and in this Case No. 4:11-CV-379-A as well as the arguments made by the parties to the bankruptcy court at the hearing held in Adversary No. 09-04212 on March 7, 2011, in deciding the motion to dismiss.